## First State Bank of Monterey, Ky. v. Vories, By, Etc.

(Decided June 2, 1922.)

## Appeal from Owen Circuit Court.

1. Pleading—Variance.—Under the provisions of section 129, Civil Code, there is no fatal variance between pleadings and proof which does not mislead a party to his prejudice in maintaining his action or defense upon the merits.

2. Pleading—Amendments—Discretion.—The filing of amendments is a matter largely in the discretion of the trial court and that discretion will not be interfered with upon appeal unless there has been an abuse of it.

3. Executors and Administrators—Settlement.—Where one is administrator of an estate and at the same time guardian of an infant beneficiary in that estate, upon a settlement as administrator if he as guardian receipts to himself as administrator for the funds coming to his infant ward, even though he does not actually pay to himself as guardian the money, he is chargeable with that amount, having been given credit therefor in his administrator's settlement, and the sureties in his guardian's bond are the only ones who could complain that he fraudulently pretended to receive as guardian money which he did not actually receive.

4. Executors and Administrators—Use of Funds in Partnership Business—Assignment—Trusts.—Where the only creditor of a partnership has knowledge that one of the partners, who is the guardian of an infant, has used his ward's funds in the partnership business, and the creditor with that knowledge extends credit to the partnership and thereafter accepts from the members of the partnership an assignment of the partnership assets to secure its indebtedness, knowing it was receiving under the assignment assets in payment of its debt equitably belonging to the infant, the creditor will be treated as holding the same in trust for the ward.

J. W. CAMMACK and A. M. BAKER for appellant.

H. W. ALEXANDER and J. G. VALANDINGHAM for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Prior to June, 1900, R. E. Vories and W. H. Vories, brothers, were equal partners in a general merchandise business at Monterey, in Owen county, under the firm name of Vories Bros.

In June, 1900, W. H. Vories, one of the partners, died intestate, leaving a widow, Josie A. Vories, and three infant children, appellee Ruth Vories being the youngest.

R. E. Vories, the surviving brother and partner, was appointed administrator of his deceased brother's estate and qualified as such. The estate consisted of his one-half interest in the mercantile business, some small interest in real estate inherited from his mother and a ten thousand dollar life insurance policy payable to his estate, aggregating, outside of the inherited real estate, $15,-559.98, as shown by the settlement of the administrator. The debts against the estate were $5,744.45, which left for distribution to the widow and three infants $9,815.53.

This settlement was made by the administrator on the 30th day of August, 1902, and on that day he qualified as guardian of each of the three infants, and in his settlement as administrator he, as guardian for each of the infants, receipted to himself as administrator for $1,630.92 owing to each of them out of the estate, and files as a part of his administrator's settlement a receipt to himself as administrator from himself as guardian for those amounts. In other words, on that day R. E. Vories, as administrator of his deceased brother, paid to himself as guardian of each of the three infant children that amount of money and received credit therefor in his settlement as administrator.

The widow, Josie A. Vories, took the place of her deceased husband as a partner in the mercantile business and invested her part of the estate in that way, and the partnership was thereafter conducted under the firm name of R. E. Vories & Company, and possibly, at times, under a different firm name.

The surviving partner, R. E. Vories, who was also the guardian of the infant appellee, Ruth Vories, used this money of the infant which came to his hands as guardian in the mercantile business and presumably this fact was known to the other partner in the business, Josie A. Vories, who was the mother of the infant, and the evidence shows it was likewise with the knowledge of the appellant bank with which the firm did its banking business, and with which the administrator also did his banking business.

The new firm apparently was not successfully operated, for at times the appellant with which it did business was given liens upon its assets, or some or all of them, to secure it in indebtedness, and finally, in March, 1914, the firm, consisting of R. E. Vories and Josie A. Vories, assigned to appellant bank all of the partnership

assets to secure it in the payment of an indebtedness of approximately $4,350.00 and gave to the bank the possession and control of its assets to be sold by it and applied on its said indebtedness, the officers of the bank at the time not only knowing that the infant's money had been by her guardian put into this business, but knowing before the execution of that assignment that the infant was claiming a lien by reason of that fact upon the interest of R. E. Vories in the partnership assets.

The appellant bank realized out of the assigned assets $2,333.87, one-half of which, $1,166.93, represented the interest of R. E. Vories in the partnership assets, and upon a submission the court gave to the infant a judgment for that amount against the appellant bank, and from that judgment this appeal is prosecuted.

The plaintiff's petition was based upon the idea that the assignment to the bank was fraudulent and preferential, and asked that it be declared to operate for the benefit of all the creditors of the assigned firm; and then she alleges that the fund due her from the guardian, R. E. Vories, is a trust estate in his hands belonging to her, and is, therefore, a preferred claim and she is entitled to receive out of the assets belonging to R. E. Vories any portion thereof which had been applied to the indebtedness of the appellant bank and prays that her claim be declared to be a preferential and superior one to the claims of the bank.

The action was originally brought against R. E. Vories, Josie A. Vories and the heirs-at-law of R. W. Birchett and the First State Bank, the allegation being that Josie A. Vories and the said R. W. Birchett, deceased, were the sureties of R. E. Vories in his bond as guardian. But the court, upon motion of some of the defendants, required the plaintiff to elect which cause of action she would prosecute and against whom, whereupon she elected to prosecute the same against R. E. Vories and the appellant bank, and the action was dismissed as to the other defendants.

So that the only question here is the correctness of the judgment in favor of the infant against the bank.

The first question made by appellant is that as the plaintiff alleged in her petition her father had his life insured for ten thousand dollars and that she was one of the beneficiaries in the policy to the extent of two thousand dollars, and that the said sum of two thousand dol-

lars was paid over to and received by her said guardian for her, when the evidence disclosed that the insurance policy was made payable to the estate of the decedent, there was a fatal variance between the allegations and the proof.

If this was a controversy between the appellee claiming to be a beneficiary under a policy of life insurance and the creditors of her deceased father, there would be a fatal variance, because in the one case she would be entitled to the two thousand dollars as a beneficiary if that allegation were true, and in the other her father's creditors would be entitled to the two thousand dollars if the policy was made payable to his estate as shown by the proof.

But here the essential allegations are that R. E. Vories qualified as her guardian and that as such he received two thousand dollars belonging to the ward, and it can make no possible difference to any other creditor of the guardian whether that two thousand dollars was the proceeds of the life insurance policy or was derived from some other source.

Under the provisions of section 129 of the Civil Code there is no fatal variance between pleadings and proof which does not mislead a party to his prejudice in maintaining his action or defense upon the merits and clearly here the defendant was not misled.

The appellant further complains that the court erred to its prejudice in refusing to permit it to file a fourth amended answer to conform to the proof and to correct certain alleged errors in former pleadings. Prior to the offering of this fourth amendment three other amended answers had been filed by appellant and in them much of the matter set forth in the fourth amendment had already been set up and relied upon, and the court upon motion or demurrer had stricken most of it from the former pleadings, and, in effect, had passed upon many of the questions sought to be made by the fourth amendment.

The filing of amendments is a matter largely in the discretion of the trial court and that discretion will not be interfered with upon appeal unless there has been an abuse of it. Here, this amendment was offered after all the evidence was taken, and even if it had been permitted to be filed it is clear that it could not have affected the result of the litigation. All of the essential facts in this

case either stand admitted or are convincingly shown by the evidence.

Not only are we convinced the trial court did not abuse its discretion in refusing to permit this amendment to be filed, but it is clear that the result of the litigation would necessarily have been the same if it had been filed.

The chief complaint is that appellant was denied the right to make the question by this amendment that R. E. Vories as administrator of W. H. Vories, had not actually paid to himself the $1,630.00 shown by his receipt as guardian. Waving the question whether appellant could collaterally attack this administrator's settlement and the various guardian's settlements, and waiving the ques-- tion whether it would in any event be in position to attack them even directly, the evidence without contradiction shows—not only the record evidence but the evidence of the guardian and administrator himself—that he on the date he made his settlement as administrator receipted to himself as such for that amount of money received by him as guardian, and that although he did not physically take that much money from his hands as administrator and place it in his hands as guardian, he did, in fact, transfer from himself as administrator to himself as guardian a liability to that extent and a liability which was honestly and justly coming to him as guardian from the decedent's estate. Whether he had theretofore misappropriated any funds as administrator is immaterial in this action, for the reason that he himself is not making and cannot make that question, and neither his sureties as administrator nor his sureties as guardian are parties to this litigation.

If he as administrator committed any fraud against anyone by receipting to himself as such administrator for $1,630.00 paid to himself as guardian, it was against his sureties on the guardian's bond and they are not parties to this action and are not complaining. They are the only ones who could complain that he fraudulently pretended to receive as guardian money which he did not actually receive.

But the fact is he qualified as guardian of these infants, and their mother went on his bond as such, so that he might retain as guardian the funds belonging to them which he then held as administrator to the end that the funds might be used in the business which R. E. Vories and Josie A. Vories were then conducting. And even if

he had prior thereto, while holding the fund as administrator, actually have invested it in the mercantile business, yet, if when he came to settle as administrator he by receipting to himself as such for that amount received as guardian, only transferred his liability for that fund from himself as administrator to himself as guardian, nobody can complain of that action except the sureties on the guardian's bond.

The remaining question is can the partnership property assigned by the members of the partnership to a creditor of the partnership be subjected to the payment of a trust debt of one of the partners to the extent of his interest in the partnership, before the partnership debts are fully paid, under the facts of this case?

It is disclosed here that the guardian, who was one of the partners, used the funds of his ward in the partnership business presumably with the knowledge and acquiescence of the other partner, who was the mother of the infant, and it is likewise disclosed that the use of the infant's funds in the partnership business was known to the assignee of the partnership who, so far as this record discloses, is the only creditor of the partnership The bank knew that the guardian of this infant had used the funds coming to the infant in the partnership business and, notwithstanding this knowledge, it continued throughout a long term of years to extend credit to the partnership presumably knowing that this infant's claim would be asserted as a preferential one, and finally in 1914, accepted an assignment of all the assets of the partnership in which it knew the infant's money had been placed to secure it in the payment of its debts against the partnership. And under that assignment it collected some $2,333.00 which it now asserts the right to credit on its own indebtedness to the prejudice of this infant whose funds it knew had been placed in and used by this partnership.

It is not necessary that we should pass upon the question whether under the provisions of section 74 of the Kentucky Statutes a trust debt of one member of a partnership would be preferred to the partnership debts in the distribution of the partnership assigned estate, for independent of that statute there exists under the facts in this case an equity and a right, separate and apart from all statutory provisions, giving the ward preference over the partnership creditor.

Here the partnership creditor had knowledge that the ward's fund had been used in a partnership business, and with that knowledge in its possession it not only extended credit to the partnership but it accepted from the members of the partnership an assignment of the partnership assets to secure its indebtedness, knowing at the time that the infant's funds had been used in that partnership and knowing it was receiving under the assignment assets in payment of its own debt equitably belonging to the infant. It is a rule of equity that if one accepts from a guardian in payment of the guardian's debt funds or property belonging to the ward, with knowledge of the facts, he will be treated as holding the same in trust for the ward. As said in Hill v. McIntyre, 30 N. H. 410 (75 Am. Dec. 229):

"Courts of equity act by creating trusts *in invitum*, where a party purchases trust property, knowing it to be such, in violation of the objects of the trust. In such a case, courts of equity force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it in the same manner as the trustee himself held it."

Carpenter v. McBride, 3 Fla. 292 (52 Am. Dec. 379 and note); Winter v. Truax, 87 Mich. 324 (24 A. S. R. 160); Englar v. Offutt, 70 Md. 78 (14 A. S. R. 332 and note); O'Herron v. Gray, 168 Mass. 573 (60 A. S. R. 411 and 40 L. R. A. 498); Cohnfeld v. Tannenbaum, 176 N. Y. 126 (98 A. S. R. 653); Webb v. Graniteville Mfg. Company, 11 S. C. 396 (32 Am. Rep. 479); McDuffy v. McIntyre, 11 S. C. 551 (32 Am. Rep. 500); United States Fidelity, etc., Company v. Adoue, 104 Tex. 379 (Ann. Cases, 1914b 667 and note, and 37 L. R. A. (N. S.) 409 and note).

In this case it is unnecessary to decide whether the equitable principle stated would apply against all of the creditors of an assigned firm, whether they had notice of the fact that the assigned property consisted of a trust estate, for the reason that there is in this case only one creditor involved and that creditor had notice of the fact that the assigned estate consisted, at least in part, of trust property.

The judgment of the chancellor is in accord with the equitable principle we have tried to elucidate and it is therefore affirmed.