PORTER, STATE AUDITOR, RESPONDENT, *v.* HARTLEY ET AL., RESPONDENTS; BANKING CORPORATION OF MONTANA, APPELLANT.

(No. 5,126.)

(Submitted April 7, 1923. Decided May 12, 1923.)

[216 Pac. 344.]

*States — Claims Against—Assignment—State Board of Examiners—Powers—Partnership.*

State—Claims Against—State Board of Examiners—Powers.
  1.  After the state board of examiners has examined, adjusted and approved ·a claim against the state its functions are ended and it is without power to determine the legal question of title to the warrant issued thereupon in a dispute between conflicting claimants thereto.

Same—Assignment of Claims Against—Where Filed.
  2.  Notice of assignments of claims against the state must be filed with the state auditor and not with the clerk of the state board of examiners.

Partnership—Individual Debts of Partners—Payment Out of Assets, When.
  3.  The personal debts of a partner cannot be satisfied out of the partnership assets until the partnership obligations have all been discharged.

State—Claims Against—Assignment—Form—Sufficiency.
  4.  No particular set of words is necessary to impart notice of an assignment ·of a debt due· the assignor, and therefore one assigning "all our right, title and interest in and to all funds belonging to, or to become due," to a firm of contractors from the state and directing the state auditor to deliver warrants due it on account of the construction of a state building to the assignee bank, was sufficient to advise the debtor that the assignee was the owner of the funds due.

[67 Mont. 244.]

*Appeal from District Court, Lewis and Clark County in the First Judicial District; C. D. Borton, Judge for the Seventeenth District, presiding.*

ACTION of interpleader by George P. Porter, as State Auditor, against James Hartley and another, copartners doing business under the firm name and style of James Hartley & Co., and others, wherein the State, for the use and benefit of the Industrial Accident Fund, intervened. From the judgment rendered, defendant Banking Corporation of Montana appeals. Reversed, with directions.

*Mr. Hugh R. Adair* and *Mr. Ulysses A. Gribble,* for Appellant, submitted an original and a reply brief and argued the cause orally.

The fiscal agents of the state of Montana are the state treasurer and the state auditor. Inasmuch as it is the duty of the state treasurer to receive and keep all moneys belonging to the state, we respectfully submit that the treasurer is the fundholder of the state, and that he, together with the state auditor, constitute the fiscal agents of the state. By the weight of authority we believe that where the government is the debtor, notice of the assignment should be given to the fiscal agent of the government,—in other words, to the holder of the funds of the government. In *Third Nat. Bank* v. *Atlantic City,* 130 Fed. 751, 65 C. C. A. 177, and *Dickerson* v. *Spokane,* 26 Wash. 292, 66 Pac. 381, the notice was served upon the City Comptroller. In *Adamson* v. *Paonessa,* 180 Cal. 157, 179 Pac. 880, the notice was filed with the city clerk. In *National Bank* v. *United Security L. Ins. & T. Co.,* 17 App. D. C. 112, the notice was served simply upon the depository of the fund, that is, the bank. *Field* v. *Mayor of New York City,* 6 N. Y. 179, 57 Am. Dec. 435, and *Parker* v. *Syracuse,* 31 N. Y. 379, hold that delivery of the order to city comptroller is sufficient notice. In all of the above cases the notice was held to be sufficient to bind the government.

In the recent case of *General Fireproofing Co.* v. *Keeps Dry Construction* (1919), 93 Misc. Rep. 635, 158 N. Y. Supp. 567, the supreme court held that where an assignee of claims under a contract for the improvement of the rooms in the state capitol filed a copy of the assignment in the office of the state comptroller, and left a copy at the state architect's office, the assignment will not be held invalid even though the copy left with the state architect's office was returned instead of being retained.

The Montana statutes are silent as to who is the proper person to serve with a notice of an assignment of moneys owing by the state. In view of the above authorities, we believe it unnecessary to notify the state board of examiners in order to charge the state with notice of an assignment.

*Messrs. Walsh, Nolan & Scallon, Mr. Earle N. Genzberger* and *Mr. John A. Groeneveld,* for Respondents, submitted a brief; *Mr. Groeneveld* argued the cause orally.

These assignments to the warrant claimants (respondents) were accepted and acted upon by the state board of examiners, and the matter must be deemed concluded as against third parties. It was within the province, and, indeed, a part of the duties, of the state board to determine whether they could properly make the moneys payable to the warrant claimants as assignees. The board has taken that action, and their action is not now open to review by this court. (Const., Art. VII, sec. 20; Rev. Codes 1921, sec. 248.)

It is therefore our contention that this procedure was conclusive of the rights of these warrant claimants, and that the state auditor at no time had anything in his possession belonging to James Hartley & Co., and that there is now nothing on deposit with the clerk of the court belonging to anyone except the warrant claimants. When the claims by assignment of the warrant claimants were approved by the state board of examiners without notice of any other claims, the rights of the warrant claimants were established and there was nothing

[67 Mont. 244.]

for the state auditor to do than to issue the warrants, which was done, and deliver them to the warrant claimants. (*State ex rel. Pub. Co.* v. *Kenney,* 10 Mont. 488, 26 Pac. 383; *Pyke* v. *Steunenberg,* 5 Idaho, 614, 51 Pac. 614; *Bragaw* v. *Gooding,* 14 Idaho, 288, 94 Pac. 438; *State ex rel. State Savings Assn.* v. *Draper,* 44 Mo. 245; see, also, *Third Nat. Bank* v. *Atlantic City,* 130 Fed. 751, 65 C. C. A. 177; *In re Hawley Down-Draft Furnace Co.,* 233 Fed. 451.)

The contract was entered into by the state board of examiners, and it had control and disposition of the fund and of the payments under the contract with James Hartley & Co. (Sec. 850, Rev. Codes 1921.) The action of the board is conclusive of the rights of the warrant claimants to the warrants deposited in court. (5 C. J. 955.)

Some claim was made in argument and in statements to the court that the state of Montana was the debtor and had control of the fund, and for that reason the filing of notices or assignments with the state auditor and the state treasurer would be sufficient to bind the state and put it on notice. We do not so consider the law, but assert that the rights of the warrant claimants to these warrants are conclusively established, irrespective of the validity of the assignment to the Banking Corporation. However, the proceedings for the issuance of these warrants were at all events regular, and unless the assignment claimant, Banking Corporation, has valid prior rights to the fund, the warrants were properly ordered delivered to the warrant claimants by the lower court.

Assuming the equities of the parties to be equal, the first assignee who gives notice to the debtor is entitled to priority. There seems to be no decision on the subject in Montana, but the matter has been before the supreme court of California in several cases, and as the Code provisions of Montana are very similar to those of California, we believe that the California rule should be followed. (*Smitton* v. *McCullough,* 182 Cal. 530, 189 Pac. 686; *Adamson* v. *Paonessa,* 180 Cal. 157, 179 Pac. 880; *Graham Paper Co.* v. *Pembroke,* 124 Cal. 117,

71 Am. St. Rep. 26, 44 L. R. A. 632, 56 Pac. 627; *Third Nat. Bank* v. *Atlantic City, supra.*)

MR. JUSTICE COOPER delivered the opinion of the court.

This action was instituted by George P. Porter, as state auditor, to have determined the respective rights of the several claimants to a balance due from the state to James Hartley & Co. for work done and materials furnished in the construction of what is known as the Metallurgical Building, at the State School of Mines, in Butte. Upon completion of the work in September, 1920, there was due the contractors, as James Hartley & Co. will hereinafter be called, a balance of $10,611.20. Against this amount there were brought into the case by interpleadings four groups of claims which counsel for the Banking Corporation have classified as follows: Group No. 1, $747.76 and interest for premiums due the State Industrial Accident Board under the Workmen's Compensation Act (Laws 1915, c. 96); (2) James C. Bain, as assignee, and George W. Huffaker, as sheriff of Lewis and Clark county, under writs of attachment levied and served September 15 and 24 on the state auditor in an action by Bain upon a note in the sum of $3,000, signed by James Hartley and delivered to the Merchants' & Mechanics' Bank of Helena; (3) an assignment in writing filed with the state auditor on September 23, given by James Hartley & Co. to the Banking Corporation of Montana, to secure a note in the sum of $9,000 and interest; and (4) for materials and labor used and performed in the construction of the Metallurgical Building by fifteen corporations and persons, amounting in all to the sum of $9,809.14.

The complaint alleges that the state board of examiners on October 9 allowed each of the claims filed with the clerk of the board, composing group No. 4, "ordered and directed that warrants be drawn in payment thereof," and delivered the approved claims to the state auditor for the issuance of war-

rants in favor of each of the claimants named. There is then set forth the number of each of the fifteen warrants, the claim number, the amount, and the name of the payee. The prayer is that each and all of them be required to appear, interplead and set forth "their claims and rights to said warrants, and adjust their several demands between themselves."

The State Industrial Accident Board filed its separate answer to the complaint, and offered evidence in support thereof at the trial.

The answer of the Banking Corporation avers that the assignment filed by it was given as security for moneys advanced to James Hartley & Company, a copartnership composed of James Hartley and R. W. Lamb, in furtherance of their contract with the state in which they agreed to do certain concrete and cement work upon the Metallurgical Building mentioned; that the moneys so advanced to the firm to enable it to meet its current obligations and incorporated in the note amounted to the sum of $9,132.27; that on September 30, 1921, the sum of $1,138.50 was credited and applied thereon, leaving due a balance of $8,679.71. The prayer is that the court adjudge it to be entitled to a warrant drawn in favor of F. C. Austin for the sum of $625, as its assignee, and also that the state auditor be directed to pay it from any moneys due under the contract the balance referred to.

James C. Bain and George W. Huffaker, the sheriff who served the writs of attachment and garnishment, answered jointly, alleging that Bain's claim was against Hartley individually.

The joint answer of the Montana Hardware Company and the claimants composing group No. 4, including the two Ryans, Kight and F. C. Austin, mentioned hereafter, alleges that James Hartley & Co. complied with the rules and regulations of the board of examiners requiring vouchers and receipts or other writings showing claims for labor performed or materials furnished it, and assigned to each of them as payment for materials furnished and labor performed the respective

amounts due them, and filed written assignments thereof with the board; that the board passed upon and allowed all of the claims, and ordered that warrants be issued to each of them in payment therefor.

The cause was tried by the court without a jury on October 19, 1921. At the close of the evidence the court sustained a motion for nonsuit as against the claim of the State Industrial Accident Board. As to the other claims, the court found in writing the following: That the contract was made October 25, 1919, and completed October 1, 1920; that on October 6, 1920, claims composing group No. 4 above were filed with the clerk of the board of examiners for allowance, accompanied in each instance by a written assignment, signed "James Hartley"; that on October 9 the claims composing group No. 4 were allowed by the board; that at no time before October 9 did the bank give "notice of an adverse claim of amounts due James Hartley & Co. on the contract to the board"; that neither the Banking Corporation nor Bain nor the sheriff gave notice to the board of any adverse claims; that, upon delivery of the claims to the state auditor by the board, state warrants for the various sums were drawn in favor of the parties named therein as assignees; that on September 23 the bank caused to be served upon the state auditor and the state treasurer written notice of its claim against the contractors. Upon these findings the court rendered judgment that each of the warrants so made out by the state auditor should be by the clerk delivered to each of the defendants named in group 4, and adjudged that the bank. James C. Bain and George W. Huffaker, as sheriff, take nothing as against the claimants named.

Counsel for the bank argue that the notice of assignment was in proper legal form, and upon its filing with the state auditor, imparted legal notice to all adverse claimants of the nature and extent of the bank's claim, and that it thereby acquired a right prior and superior to Bain, the attaching creditor of Hartley, and to that of the assignees of James

Hartley, whose claims were filed with the clerk of the board of examiners and signed by James Hartley. Opposing counsel contend that, because the state board of examiners was "the only board of officials to which notice of the assignment" could be given legally, and no claims other than those represented in group 4 were so filed, the ruling of the district court should be sustained.

The governor, secretary of state, and attorney general [1] "constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law." (Const., Art. VII, sec. 20.) Section 238 of the Revised Codes of 1921 allows any person having a claim against the state for which an appropriation has been made to present it in the form of an account or petition. The board is required to allow or reject claims in the order of their presentation.

To sustain the order of the district court in directing the issuance of the warrants to the several claimants composing group No. 4 would necessitate a holding that after the board had examined, adjusted and approved a claim against the state, it could determine the legal question of title to the warrant in a dispute between conflicting claims thereto. After it has examined and approved claims as provided by law, its functions are ended, and its power is exhausted. It stands between the state and persons contracting with it, and is bound to see that the rights of its principal are protected and enforced.

Section 34 of Article V of the Constitution provides that [2] "no money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer." Subdivision 17, section 151, Chapter 11, Part III, of the Revised Codes of 1921 imposes upon the state auditor the duty of drawing all "warrants on the state treasurer for the payment of moneys directed * * * to be paid out of the treasury." Section 233 requires the board to

meet the third Monday in every month, and, under section 244, "to proceed to examine and adjust" all claims properly presented against the state. If the board approve a claim, it "must indorse thereon," over the signature of the members, the words, " 'Approved for the sum of —— dollars,' and transmit the same to the office of the state auditor; and the auditor must draw his warrant for the amount so approved in favor of the claimant, or his assigns, in the order in which the same was approved." (Sec. 239.)

It is plain from these provisions of the statute that notices of assignment, writs of attachment or execution should be filed with the state auditor, and that, by filing its notice of assignment in the office of the state auditor, the bank acquired rights prior and superior to those of the claimants named in group 4, whose assignments were filed with the clerk of the board of examiners at a later date.

The note upon which the action of *Bain* v. *Hartley* was [3] brought and attachment process served upon the state auditor was the personal obligation of Hartley. It was purchased of the Merchants & Mechanics' Bank by Bain, who sought to satisfy the indebtedness by garnishment of Hartley's interest in the balance due James Hartley & Co. on their contract with the state. The law is that the personal debts of a partner cannot be satisfied out of the partnership assets until the partnership obligations have all been discharged. "It is only the interest of the partner in the partnership property which can be levied upon and sold under an attachment against him. This interest is the surplus of the property remaining after the adjustment of accounts between the partners and the firm debts." (30 Cyc. 576; Rowley on Partnership, sec. 820.)

The last contention counsel make is that the assignment to [4] the bank is "what might be called a blank assignment, without the special statements as to the rights and causes of action assigned." The language of the instrument is: "We hereby make assignment of all our right, title and interest in and to all funds belonging to, or to become due to the firm of

James Hartley & Co." In the next paragraph the auditor is requested to deliver warrants or other evidence of any obligation due to James Hartley & Co., on account of the construction of the Metallurgical Building at the School of Mines at Butte, as soon as the same are ready for delivery. It is signed, "James Hartley & Co., by R. W. Lamb," who was a member of the firm. This is clear enough to apprise any person of ordinary intelligence that it was the intention of James Hartley & Co. to transfer the moneys earned by it upon its contract with the state to the bank. That thought was meant to be, and was, clearly expressed therein. No particular set of words is necessary to impart notice in a case like this. It is sufficient if such information is communicated to the debtor as gives him to understand that the assignee is the owner of the chose in action. (5 C. J., p. 936.) In the fourteenth edition of Mr. Story's work on Equity Jurisprudence (vol. 3, sec. 1408) it is said: "In order to constitute an assignment of a debt or other chose in action in equity, no particular form is necessary. A draft drawn by A. on B. in favor of C., for a valuable consideration, amounts (as we have seen) to a valid assignment of so much of the funds of A. in the hands of B." (See, also, *Hovey* v. *Grand Trunk Ry. Co.,* 135 Mich. 147, 97 N. W. 398; *United States Farm Land Co.* v. *Bennett,* 55 Cal. App. 299, 203 Pac. 794; *National Bank* v. *United Securities etc. Ins. & T. Co.,* 17 App. D. C. 112.)

The balance due the partnership of James Hartley & Co. on its contract, as testified to by the clerk of the board of examiners upon the final settlement, was found by the board to be $10,611.20. On October 25, by stipulation in writing filed with the clerk of the court, all the parties to the action agreed that the warrants in favor of George Ryan, L. E. Ryan, and Ed. Kight for labor, aggregating the sum of $429, should be delivered to them. During the trial it was stipulated between all the parties that the warrant covering the claim of F. C. Austin in the sum of $625 should be delivered to the Banking Corporation, as his assignee. This reduced

the partnership fund to the sum of $9,557.20. The evidence of Mr. Ramsey, the president of the bank, was that on September 30, 1921, the Banking Corporation received and credited upon the indebtedness of Hartley & Co. $1,138.50, and that there then remained due from the firm the sum of $8,697.71, with interest.

The Banking Corporation being entitled to judgment, and it being apparent that its claim, principal and interest, will absorb the balance of the partnership fund, it follows that the judgment and order appealed from should be reversed, with directions to the district court to enter judgment in favor of the bank, that it order redelivery of the warrants now in custody of the clerk of the court to the state auditor, and that it further order that the state auditor make out and deliver to the Banking Corporation a warrant for the amount of its claim with interest. And it is so ordered.

*Reversed, with directions.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Rehearing denied May 25, 1923.