## Perry Bank & Trust Company et al. v. Napier et al.

(Decided October 13, 1931.)

CRAFT & STANFILL for appellants.

S. M. WARD for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On July 16, 1928, W. B. Napier, R. C. Napier, and E. C. Duff executed and delivered to the Perry Bank & Trust Company a note of that date for $1,000, due 12 months after date, and bearing interest from date until paid. This note had been credited with a payment of $50.67 as of date April 28, 1929. In November, 1928, the Perry Bank & Trust Company was placed in the hands of the banking department of Kentucky, and F. L. Cisco was thereupon appointed and qualified as special deputy banking commissioner and liquidating agent to take over the affairs of the bank. On August 26, 1930, he instituted suit in the Perry circuit court against the makers of the note.

By the second paragraph of his separate answer and set-off E. C. Duff affirmatively alleged that, at the time the bank closed its doors and went into the hands of the liquidating agent, there was to the credit of Z. T. Duff a sum belonging to defendant E. C. Duff more than suffi-

cient to pay off and discharge the note sued on, which fact was known and understood by the bank; that at that time the defendants W. B. Napier and R. C. Napier were insolvent; that he is entitled to have the note sued on charged to him on account of Z. T. Duff.

W. B. Napier and R. C. Napier, by a second paragraph of their answer to the petition, made the same allegations as did E. C. Duff with reference to his interest in the deposit to the credit of Z. T. Duff, and alleged that they are entitled to have the note sued on charged to that account, but do not allege that they or either of them are insolvent. By reply, the affirmative matter in the separate answers is traversed, thus completing the issues.

At the close of the evidence, as directed by the court, the jury found for the defendants and the court adjudged that the note sued on be charged by plaintiff to the account of Z. T. Duff; dismissed plaintiff's petition; and adjudged that defendants recover their costs. Plaintiff has appealed.

The evidence shows that, at the time the bank went into the hands of the liquidating agent, there was deposited to the credit of Z. T. Duff about $5,400. Z. T. Duff testified that the money to his credit in the bank belonged to him, to E. C. Duff, his father, and to C. E. Duff, his brother; that he did not know the exact amount belonging to E. C. Duff, but that it was more than $1,000; that C. E. Duff was also interested in the fund to the extent of approximately $1,000. He testified that each of them contributed to this account for the purpose of buying jury and witness claims, and it had been carried in his name for two or three years; that he had only checked on the account for things in which they were jointly concerned; that, after the bank closed, he filed an affidavit that it was a partnership account, and thereafter, two notes, one for $50 and the other for $20, which had been signed by E. C. Duff with another party were charged to the account. C. E. Duff testified in substance and effect the same as did his brother. He stated that the money deposited to the credit of Z. T. Duff was a partnership account.

W. B. Napier testified that he was principal in the note, and R. C. Napier and E. C. Duff were sureties; that he and his wife executed and delivered to the sureties a mortgage on his farm to indemnify them against loss by reason of their suretyship; that the farm contains about 71 acres, and is improved by a six-room house, which is

occupied by him, and some outbuildings; that he listed this land for taxation at $1,700, and gave as his opinion that, it is worth as much as $1,000. He further testified that the credit of $50.67 represented the amount which he had on deposit in the bank and which had been applied on the note.

R. C. Napier, father of W. C. Napier, testified that he signed the note; that he was the owner of about 1,000 acres of land, some of which had been leased for coal and on which mining operations were being carried on. He did not give the value of his holding, but stated that it was subject to execution. The indemnifying mortgage referred to by witnesses was produced in evidence by the county court clerk.

In the answer of E. C. Duff it is alleged that he has an interest in the money credited to the account of Z. T. Duff. Z. T. Duff testified that he made an affidavit that it was a partnership account, and C. E. Duff also testified that it was a, partnership account. In other words, it is made to appear that the fund to the credit of Z. T. Duff is a partnership asset. If this be true, under existing circumstances as shown by the proof, E. C. Duff, as one of the partners, is not entitled to have his individual debts paid out of the partnership account.

In discussing the rights to partnership assets as between a firm creditor and a creditor of an individual member of the firm, this court, in the case of Springfield Fire & Marine Insurance Co. v. Huntington National Bank, 229 Ky. 674, 17 S. W. (2d) 726, 728, 71 A. L. R. 70, said:

"... Vanhoose in this case, as well as all other creditors of the insured partnership, had the right to have the partnership assets (the proceeds of the insurance being such) appropriated to the payment of their partnership debts before plaintiff, an individual creditor of one of the partners, could acquire the right for any such assets to be appropriated to the payment of its debt."

The same principle is recognized in the following cases: Ellis v. Johnson, 4 Ky. Law Rep. 991; First State Bank of Monterey v. Vories, 195 Ky. 96, 242 S. W. 18; Elkins v. Briscoe, 105 S. W. 412, 32 Ky. Law Rep. 197.

The interest of a partner in partnership assets is only his share which remains after the debts of the firm

have been fully paid and creditors of the partnership have enjoyed preference over creditors of the individual member. Midland National Bank of Minneapolis, Minn., v. Douglas, 199 Iowa 1190, 203 N. W. 44; Porter v. Hartley, 67 Mont. 244, 216 P. 344.

A creditor cannot apply funds of a partnership to payment of individual indebtedness of one of the partners without the consent of the remaining members of the firm. Redfield v. Wells, 31 Idaho, 415, 173 P. 640; Parker v. Wells, 84 Ark. 172, 105 S. W. 75; Lovins v. Laub, 85 Misc. Rep. 336, 147 N. Y. S. 304. Elucidative statements of the doctrine recognized in the cases cited will be found in 47 C. J. 774, 780; 918.

From the foregoing and numerous other authorities of similar import, we find the general rule to be that a partner has no individual title to firm assets, but that his interest in the partnership funds is but a chose in action or a right to his proportionate share of whatever remains after the partnership indebtedness is paid and the equities as between partners adjusted by proper accounting. No partnership accounting or adjustment of equities as between partners has been made so far as the record discloses; hence it would appear that the court erred in peremptorily instructing the jury to find for the defendant and in adjudging that the individual indebtedness of E. C. Duff be paid out of the account carried in the name of Z. T. Duff.

Counsel for appellant insistently urge as a ground for reversal that the note should not be paid out of a deposit belonging to a surety until it is shown that the principal is insolvent or where it is shown that the surety is indemnified by mortgage, and authority is cited to support that contention. But, inasmuch as the judgment must be reversed for reasons already indicated, and the evidence may be materially different on another trial, it is unnecessary to determine that question, and we refrain from so doing.

Judgment reversed, and cause remanded to lower court for a new trial and for further proceedings consistent with this opinion.