## Bauer Cooperage Company v. Ewell & Smith.

(Decided October 16, 1912.)

### Appeal from Laurel Circuit Court.

1. Appeal—Opinion on First Appeal Law of Case.—It is the general rule that on a second appeal the opinion on the first appeal will be treated as the law of the case, and all the questions which were then properly before the court were conclusively settled, as if each was specifically referred to in the opinion.

2. Judgment of Chancellor—When Court of Appeals Will Assume Judgment Sustained by Evidence.—Where the chancellor based his judgment overruling exceptions to a commissioner's report upon parol evidence heard at the time, and there is no bill of exceptions in the record showing what that evidence was, the Court of Appeals will assume that the chancellor's judgment was sustained by the evidence.

3. Land—Controversy as to Number of Acres—Expense of Surveyor.—Where, in a controversy over the number of acres in a tract of land, one of the parties employed a surveyor to represent him, and to work with the surveyor appointed by the court,

the party so employing the surveyor must bear the expense of that service.

4. Same—Surveyor's Report—Expense of Taxed as Costs.—In a controversy over the number of acres contained in a survey of land, the expenses of a surveyor's report made pursuant to an order of court appointing the surveyor, will be taxed as costs, and paid by the loser.

5. Timber—Action to Recover for Timber Sold—When Purchaser Not Entitled to Credit for Judgment Against Him.—In a suit to recover for timber sold upon a certain boundary of land, the purchaser is not entitled to a credit for a judgment obtained against him by third parties for trespass and cutting of timber, where it appears that the land upon which the trespass was committed was not within the boundary containing the timber sold.

6. Partnership.—The individual indebtedness of one partner cannot be set off against a debt due the partnership.

7. Timber—Sale of—How Interest on Purchase Money Calculated in Certain Case.—Where a contract for the sale of timber provided that the unpaid purchase money should be paid upon the making of a survey by the vendor, and the parties subsequently made a supplemental agreement, which provided for interest bearing notes for the unpaid purchase money, the interest on the purchase money should be calculated from the time of the supplemental agreement, and not from the time of the original contract.

8. Same.—It was not error for the chancellor to calculate interest upon the unpaid purchase money to the day the judgment was entered, and include such interest in the judgment, which bore interest from its date.

W. L. BROWN, G. G. BROCK and O'REAR & WILLIAMS for appellant.

H. C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is the second appeal from a judgment obtained by Ewell & Smith, against the appellant, to recover the balance due for certain timber sold by Ewell & Smith to the appellant in 1899. The opinion upon the former appeal, reported in 115 S. W., 828, recites the material facts of the case.

Ewell & Smith sold the Bauer Cooperage Company certain timber upon several tracts of land located in Laurel County, at the agreed price of $1.75 per acre. Of the purchase price $6,000 was paid in cash, and $4,000 was to be paid when the boundary of the land should be

surveyed and the number of acres ascertained. A dispute arose between the parties as to the number of acres included within the boundary, Ewell & Smith fixing it at 11,672 acres, while the Cooperage Company claimed there were only 10,139. On January 25, 1900, a supplemental agreement was entered into between the parties, by which an additional sum of $4,000 was that day paid by the Cooperage Company, and it executed its promissory note for $3,625, payable July 25, 1900, with interest. On November 19, 1901, appellant paid the further sum of $3,000, making a total of $16,625 paid upon the purchase price. There is no dispute as to any of these payments, and it is not contended by either party that any other payments were made.

Upon the first hearing a judgment was rendered for appellees for a balance of $4,314.52, with interest from March 7, 1908. That judgment was based upon a survey calling for 11,499 acres in the boundary. Upon an appeal to this court, however, that judgment was reversed on February 4, 1909, for the reason that the circuit judge had not adopted the proper method of ascertaining the aggregate acres of the several surveys; and in remanding the case for further proceedings, we said:

"The sole question involved in this case is: How many acres of timber did plaintiffs sell to defendant? The question can be answered with reasonable accuracy. The land can be surveyed, and a calculation made of its area. A careful examination of the record shows that there are inaccuracies in the surveys furnished both by plaintiffs and defendant. In stating his conclusion the chancellor admitted this fact. He arrived at the number of acres upon which his judgment was based, not upon an accurate survey, or from accurate calculations made by those who were competent to make them, but upon matters which were not material to the issue involved. At best, it was simply a rough guess. Being capable of ascertainment, the number of acres should have been accurately ascertained. As the chancellor was not satisfied with the accuracy of either survey, or with the calculations or area based thereon, he should have appointed a competent surveyor, and had the land re-surveyed, and the area properly calculated. Upon the return of the case the chancellor will enter an order to this effect, unless the parties agree upon a competent surveyor."

Upon the return of the case, the court· appointed Samuel Mory surveyor, and on December 9, 1910, he filed his report, showing the boundary contained 11,296 acres of land, which included, however, 36 tracts, aggregating 810 acres which appellant insists were not embraced within the boundary. On February 20, 1911, appellant filed exceptions to the surveyor's report, whereby it insisted upon excluding the 36 disputed tracts. Parol evidence was taken upon these exceptions; and, on July 6, 1911, the exceptions were overruled, and the report was confirmed. On July 8, the court entered a judgment based upon Mory's survey showing 11,296 acres, and found that there was still due appellees, including interest to that date, the sum of $6,795, for which they were given judgment. From that judgment the Bauer Cooperage Company prosecutes this appeal.

In its judgment the court found that the several disputed strips of land were small tracts inside the boundary of 11,296 acres, but that the Cooperage Company had entered on that land and cut and removed the timber therefrom much more than five years before the date of the judgment; that there was no litigation then pending by any person or persons claiming to own either this land or the timber; that whatever suits had theretofore been brought about the cutting and removing of any portion of the timber included in the above boundary, had long since been settled in favor or Ewell & Smith; that there was no issue made by the pleadings in this case as to the ownership of the timber sold; and that all questions as to the title to the land and timber had theretofore been settled. We will consider in detail the several grounds relied upon for a reversal.

1. Appellant first insists that its motion made June 19, 1911, to dismiss the action upon the ground that it had been prematurely brought, should have been sustained. This motion is based upon the theory that the action was really brought upon the supplemental contract of January 25, 1900, and that, by its terms, the contract had not matured when the action was brought on January 20, 1904. The propriety of that ruling, however, necessarily followed from the reversal of the former judgment, since the effect of that ruling was to hold that the action had not been prematurely brought. The motion to dismiss presented a question of law which was ever present—upon the first appeal as well as upon

the second. No additional pleadings were filed, or depositions taken, after the return of the case for the second trial. The only new evidence consisted of the parol testimony heard upon the exceptions to the surveyor's report.

In Newman's Pleading & Practice (2nd Ed.), section 708, the rule of practice is announced as follows:

"It is the general rule that on a second appeal the opinion on the first appeal must be treated as the law of the case, and all the questions which were then properly before the court are conclusively settled, as if each were specifically referred to in the opinion. It follows that an erroneous instruction given in the first trial, and not objected to on appeal, is the law of the case on a second appeal, and where no question was raised as to the sufficiency of the answer upon the first appeal the question is concluded by that appeal."

In Hopkins v. Adam Roth Grocery Co., 105 Ky., 357, we said:

"The legal principles determined in the first appeal of a case are not merely precedents for the guidance of this court on a second appeal of the same case. But the law as first determined—right or wrong—is the law of the case, and must control, not only the lower court upon a return of the case, but also this court in any subsequent appeal."

And, this court will not go behind the first decision to decide a question which was or could have been then decided, unless it was especially left open for future litigation. Bean v. Meguiar, 20 Ky. L. R., 885, 47 S. W., 771. If this action was prematurely brought that question should have been raised upon the former appeal; and not having been raised, it is equally concluded by the former appeal. Drake v. Holbrook, 28 Ky. L. R., 1319, S. W.

2. It is further insisted that appellant's exceptions to the surveyor's report should have been sustained. The judgment of the trial court upon the exceptions was based upon parol evidence heard in open court. Appellant attempted to make a bill of exceptions, bringing that evidence into the record; and, over appellees' objection, the circuit court allowed the transcript to be filed, after the expiration of the term at which the evidence was taken without any order having been made

giving time in which to do so. Upon motion made by appellees in this court, that transcript was stricken from the record; and there is, therefore, no evidence before us upon that subject. We must assume, therefore, that the chancellor's judgment was sustained by the evidence.

3. Appellant employed Baker, at a cost of $900, to make a survey for appellant's individual use; and, it now insists that the chancellor should have given it credit for that expense, or for at least one-half of it. There is no merit, however, in this contention; for although appellant found it necessary to employ Baker, it was only such an expense as every litigant must stand in the preparation of his side of a difficult case. Baker was not appointed by the court to make the survey; on the contrary, his employment was with the appellant alone, and it must pay for it.

4. Appellant further claims that the cost of Mory's survey, aggregating $1,166.49, should not have been taxed as costs and charged against the appellant as the loser. Appellant's theory upon this subject is, that Mory's surveys were in the nature of services rendered in the settlement of a partnership, and that these costs should be equally borne by the partners. We do not so view the case. The transaction had none of the features of a partnership. This was an ordinary litigation, in which these costs were incurred as a part of the necessary expense of determining the rights of the parties, and the surveyor's fee, like all other costs, should go against the loser.

5. Prescott & Morgan obtained a judgment against appellant for $490.95, for trespass in cutting timber upon land owned by Prescott & Morgan. Appellant paid that judgment, and now insists that it should have credit for the amount so paid, upon the purchase price of the land, upon the theory that the land from which the timber was cut, and for which Prescott & Morgan obtained judgment, was embraced within the survey sold to it by Ewell & Smith. Ewell, however, expressly testifies that this timber was cut from lands lying outside of this boundary; and, on this, he is not successfully contradicted. The evidence, therefore, was sufficient to sustain the finding of the chancellor upon this point.

6. The Bauer Cooperage Company had a judgment against Ewell for $40.45, and asked that it be set off against the purchase price due Ewell & Smith for the

land. Ewell agreed that it might be done, but Smith's administratrix objected, saying she did not wish to have the partnership affairs confused with the individual affairs of Ewell; and the court declined to direct the set-off. In this the court ruled properly, since it is a well settled principle that the individual indebtedness of one partner cannot be set off against a debt due the partnership.

7. Finally, it is insisted that the circuit court gave appellees interest upon the deferred purchase money from the date of the contract, and that this was error. By making the calculation we find that the trial court did allow interest from the date of the contract. Was this error? Appellant contends that the purchase money was not due under the contract and should not bear interest until a deed had been tendered containing a correct survey of the land sold. This necessitates an examination of the two papers which constituted the contract. The original contract of April 5, 1899, bound appellant to pay appellees $4,000, "when they survey and deed it the boundary of timber, this day sold it; and also binds itself to execute to said Ewell & Smith two notes of equal installments, payable annually, with interest thereon for the balance due said Ewell & Smith for said timber as per this written contract this day delivered—the notes to be paid in one and two years from date." If the original contract stood alone, it might well be argued that the purchase money bore interest from December 2, 1899—the date the deed was tendered under the first survey. Meagher v. Puckett, 19 Ky. Law Rep., 879; 44 S. W., 389.

By the supplemental agreement, however, of January 25, 1900, appellant not only paid appellees the further sum of $4,000, making a total of $10,000 paid up to that date, but, on the same day, it executed to the appellees its interest-bearing note for $3,625, payable in six months thereafter. The supplemental agreement further recited that the parties thereto had agreed to correct any errors in the survey that had been made in July, 1899, and that in case Baker, appellant's surveyor, should find and point out any errors in the survey, the appellees were to correct them promptly, under the supervision of two surveyors to be designated and paid by the parties to the contract, and that as soon as said survey was thus corrected, or found to be already cor-

rected as therein provided for, then Ewell & Smith should make and deliver to the Cooperage Company an accurate map of the lands; and a deed should then be made to the Cooperage Company, and it was to execute its note to the appellees for the balance due on said timber, "as per original contract."

It will be seen, therefore, that the supplemental contract refers back to the terms of the original contract, which provided for the payment of $4,000 of the purchase money, without interest, when the survey should be completed. It also binds appellant to execute two notes, payable "in one and two years from date." In another clause of the contract, these two notes are described as being, "two notes in equal installments, payable annually, with interest from date." The expression "payable annually with interest from date," means that interest should be paid from the date of the notes. This meaning is borne out by the last clause of the paper, which recites that, "the notes are to be paid in one and two years from date." The only note executed under this agreement was for $3,625, dated January 25, 1900, and due six months thereafter. It bore interest, however, from its date, and not from the date of the contract. Moreover, the general provision that the notes were to be executed and an additional $4,000 of the purchase money paid when Ewell & Smith surveyed and deeded the land sold, indicates quite clearly that the remaining portion of the purchase money was not to bear interest until a substantially accurate survey and deed had been made. The note of January 25, 1900, for $3,625, and due six months thereafter, bore interest, and upon its maturity carried $108.75 interest, which was paid. These facts, taken in connection with the further fact that appellees had, in July, 1899, completed their survey, and had, on December 2, 1899, tendered a deed to appellant for 11,499 acres, about which the dispute subsequently arose and which was adjusted by the supplemental agreement made on January 25, 1900, under which the interest-bearing note for $3,625 was executed, indicate that the parties construed their contract to mean that interest should begin with the execution of the supplemental contract on January 25, 1900. The only payment made subsequent to that time was the $3,000 paid on November 19, 1900.

We conclude, therefore, the parties contemplated that so much of the purchase money as remained unpaid on January 25, 1900, should bear interest from that date; and, as the note for $3,625 of that date bore interest, it should be treated as having been paid at its face value of $3,625 as of January 25, 1900, in giving the credit. By charging appellant with $19,769 as the purchase price of the 11,296 acres, and crediting it with the following undisputed payments: $6,000 paid April 5, 1899; $4,000 paid January 25, 1900; and $3,625 paid on the same date, we have a balance of $6,144 owing appellees on January 25, 1900, and bearing interest from that date. By then, charging interest on said balance of $6,144 to November 19, 1901, the date of the next and final payment of $3,000, we have an additional interest charge of $669.69, making a total of debt and interest due on that date of $6,813.69, from which the $3,000 is to be deducted, leaving a balance of $3,813.69 due November 19, 1901. To this last principal sum we must add interest to July 8, 1911, being a period of nine years, seven months and nineteen days, and a total interest charge of $2,204.94; and by adding this to the principal of $3,813.69, we have a total of $6,018.63 due appellees as of July 18, 1911, the day the judgment was entered below for $6,795.10. We have thus carried the calculation of interest to August 18, 1911—the day to which the judgment embraced interest—for the purpose of ascertaining whether the judgment was for too great a sum. The result shows that the judgment of the lower court was, therefore, for $776.47 in excess of the amount properly due appellees. In calculating the interest to the entry of the judgment, and including it in the judgment as a part of the total recovery which should bear interest from the day of the judgment, the trial court did not err. The result reached by that method of calculation did not contain an illegal compounding of interest, and the judgment is not reversed upon that score. However, as the judgment will have to be reversed, the day of its entry becomes immaterial for the purpose of calculating interest, and may well be discarded.

Judgment reversed, and action remanded with instructions to set aside the judgment, and to enter in lieu thereof a judgment for the appellees against the appellant for $3,813.69, with running interest thereon from November 19, 1901, until paid.