## Bryant Brothers et al. v. Wilson, Banking Com'r.

(Decided March 23, 1934.)

C. C. WILLIAMS and J. J. FELTON for appellants.

KELLY J. FRANCIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In April, 1930, the People's Bank of Mt. Vernon, Ky., closed its doors, and it was taken in charge by the banking commissioner of Kentucky for the purpose of liquidation Before then, and, while it was a going concern, the partnership firm of Bryant Bros., composed of L. D., O. D. and Emmit Bryant, executed three notes to the bank aggregating approximately $2,500, and which (or the renewals thereof) were unpaid at the time the banking commissioner assumed control. Later he filed these three consolidated actions (which were transferred to and tried in equity) against the surviving members of the partnership, and the personal representative of the deceased one (Emmit Bryant), who died a resident of Rockcastle county after the debts were created, wherein he sought judgment against the surviving partners and the personal representative of the deceased one for the balance due on each note. The personal representative of Emmit Bryant's estate was and is his surviving brother and partner, O. D. Bryant, and he was also appointed and qualified guardian for Emmit Bryant's two infant children and only heirs at law.

The answer filed in each case admitted the execution of the notes, but pleaded these offsets: (1) A deposit account in the bank of Emmit Bryant individually amounting to $1,450, less a 10 per cent. dividend paid by the commissioner; (2) a deposit account of $76.92 standing in the name of O. D. Bryant as administrator; and (3) a deposit account of $2,370.97 standing in the name of O. D. Bryant, guardian for his wards. Plaintiff's demurrer to that pleading, relying on such set-off items, was sustained as to the guardian's account, but was overruled as to the other two, and, the parties declining to plead further, judgment was rendered accordingly, and this appeal is prosecuted therefrom by the defendants seeking a reversal of the judgment in so far as it disallowed the guardian's account to be set off against the remaining portion of the aggregate indebtedness after crediting thereon the other two offsets.

It is stated in briefs that the complained of ruling of the court was upon the theory that the supposed necessary mutuality of accounts for the maintenance of a set-off was wanting as to the disallowed guardian's deposit account, since the general rule is that the claim sued on, and the one urged as an offset thereto by a defendant, must be mutual. At the inception of the doctrine of set-off, that requirement was construed literally

so as to embrace only claims between the identical parties and in the same capacities occupying the same status thereto, and which, at least some courts held, was so restricted as to disallow an individual claim against plaintiff to be set off against a joint claim against him and one or more other defendants, and in some instances so as to disallow a claim due a deceased obligor to be relied on as a set-off in an action against his personal representative. Other instances where such restricted rule was applied could be cited, but which we deem unnecessary, since the two we have named are sufficiently illustrative. However, while courts in strictly actions at law were so interpreting and administering the statute creating the right of set-off in such courts (and it was purely statutory as to them), the equity courts were administering a much more expanded rule, wherein the right of set-off was allowed as a defense or a pro tanto one, notwithstanding the involved obligations did not possess the strict mutuality to which we have referred. On the contrary, equity allowed the defense if the parties occupied such a privy relationship to the respective claims and toward each other, as that justice required that one should cancel the other, if no rights of a third person would become impaired thereby. The reason why the law courts adopted and applied such strictness was because of their interpretation of the original statute creating the right of set-off, and which was so construed by them, as to exclude the right when one of them was a joint one and the other only a claim in favor of one of the joint owners of the other.

That theory prevented one partner from relying upon his individual claim against the plaintiff as a set-off against the latter's action against the partnership, and which was based upon the theory that the necessary mutuality was wanting in such a case, because at that date the individual partner was only jointly liable with his other partners for the partnership obligation, and was not separately and individually liable to the owner of the obligation for the entire debt. Statutes in this and other states have eliminated that basis for that theory, since a joint contractor is now severally and individually liable for the entire joint obligation. Hence it is now the law in this state, and in practically if not all of the others, that one of two or more joint obligors may set off plaintiff's joint obligation by the amount of an individual claim due him or them from plaintiff, and which

attorneys for plaintiff in this case concede. It is now also the law that a depositor in a bank, although it has become insolvent and is in process of liquidation, may offset his deposit account against an indebtedness he owes the bank whether recovery is sought against him by the bank as a going concern or by its liquidating agent after insolvency.

There is therefore no trouble in concluding that the court properly allowed the individual deposit account of Emmit Bryant in this case, less the dividend that had been paid thereon. It is equally true that the court properly allowed the deposit account of the personal representative of Emmitt Bryant amounting to $76.92, since that was and is a claim due to the estate of the deceased obligor from which plaintiff sought and was entitled to realize its debt and which created the necessary mutuality under the modern applied rule both in law and equity, and which is now practically the same in both.

It does not expressly appear that the disallowed guardian's account of $2,370.97 was composed of the assets of the deceased partner, Emmit Bryant, but it does inferentially so appear, and it is so stated in briefs on behalf of defendants and not denied in briefs for plaintiff. If that be true, then it also composed a part of the estate of the deceased partner, Emmit Bryant, and is available, unless the mere fact of the guardian opening up that account as he did in his fiduciary capacity thereby set apart the amount of that item so as to separate it beyond his power of recall from the corpus of the estate of his deceased brother, and parent of his wards, and to thereby render unavailable his individual right of offset as to it, in the absence of some other fact preserving his right to do so in this action seeking an individual judgment against him. However, he is also sued in his representative capacity. It will be observed that the bank is insolvent, and it is charged in the answers that its assets will never pay exceeding 20 per cent. of its debts. The text in 24 R. C. L. 803, sec. 12, and in 57 C. J. 361, sec. 4, declare that courts of equity possess as a part of their general jurisdiction the power to allow or compel an offset when available and which is independent of any grant by statute. The doctrine set forth in them was early recognized and applied in this court in the case of Jeffries v. Evans, etc.,

6 B. Mon. 119, 43 Am. Dec. 158, and we have found no opinions since them departing therefrom.

However, that equity rule of practice is not applied in disregard of the necessary element of mutuality; but, when the equitable grounds exist, such courts allow and permit the set-off defense, if and provided the respective claims may be traced to sources occupying such a relationship toward each other as to create the necessary mutuality at law, and especially will the rule be applied when, on account of insolvency, nonresidency, or other recognized causes injustice and loss to the owner of the offset would result if the right was denied, provided that by doing so no legal rights of strangers or third persons are invaded. In this case the infant heirs of the deceased partner could be made to pay plaintiff's debt in certain contingencies to the extent of property they received from their father's estate, and, if they were so proceeded against in this case by plaintiff, there is no doubt but that they could avail themselves of the disputed item in this case as an offset, conceding that they had become vested with title thereto beyond recall. To not allow their guardian to do likewise for their benefit would be a great injustice to them, since in that event they would be called upon to pay at least one-third of plaintiff's claim, if not all of it, when at the same time the bank owed them the amount of the pleaded deposit.

Moreover, it is doubtful if the account, by the mere fact of having been placed upon the books of the bank in the name of the guardian (and which, necessarily, composes a part of the assets of the estate of Emmit Bryant), was thereby placed beyond the reach of recall by the personal representative who also happened to be the guardian of his brother's infant children. However, in order to sustain the guardian's right of setting off against plaintiff's claim to the extent of the amount of that account, or whatever portion thereof may be necessary, we are not confined to any of the theories so far advanced.

No creditor of a corporation, or individual, has any right or claim upon any assets in the hands of his debtor (whether solvent or insolvent) for the payment of his debt, except to the extent of the balance due his debtor after the adjustment of mutual accounts between him and his (the debtor's) creditors. It is upon such theory that a depositor in a bank may offset against a

debt he owes it, the amount of his deposit account, notwithstanding the bank's affairs may be in the hands of a trustee for liquidation. Under that well-established doctrine, the guardian's deposit account in this case is not an asset for distribution among the bank's creditors, except to the extent of any balance that might be left after the adjustment of the accounts between the bank and the obligors in the note sued on or their privies in estate. Therefore, to allow the offset would not deprive any of the bank's creditors of any right to which they were entitled.

It is a well-known principle of law that one occupying a fiduciary capacity is charged with the duty of preserving the trust estate for the benefit of its equitable owners, and in this case the infant heirs, who are such owners of the deposit account under consideration, have the right to compel their guardian, who is the defendant O. D. Bryant, to account to them for it, and, when done by him, he would be entitled to be subrogated to their rights in that account, and in this way it would become converted into an individual one of his own. Because of such considerations, courts, particularly equitable ones, before whom the question has been presented, in furtherance of justice and to prevent circuity of action, which is one of the objects to be accomplished by the doctrine of set-off, has allowed such fiduciary to plead such trust account as an offset when sued on an individual obligation of his own. It is so stated in the text in 24 R. C. L. p. 872, when it says: "Claims held by one as trustee can be used as a set-off or counterclaim in an action against him individually."

The same rule of practice is announced in a note in 19 Ann. Cas. 326, and the case (Wolf v. Beales) cited in note 6 to the text, reported in 6 Serg. & R. (Pa.) 242, 9 Am. Dec. 425. Lending color to that rule and in harmony with the reason for its allowance, the text in 57 C. J. 446, sec. 96, says: "However, this doctrine of mutuality is not permitted to work an injustice, for whenever it is necessary to effect a clear equity or to prevent an irremediable injustice the set-off will be allowed in equity, although the debts are not mutual, and the set-off, therefore, one which a court of law would not be authorized to make." Clearly the language in that excerpt, "although the debts are not mutual," refers to the strict mutuality first administered by courts of law, and that it should exist at the time that the set-

off was attempted to be asserted; and it does not refer to the expanded modern rule of traceable mutuality to the original source of the set-off relied on by one who is a privy in title to it, and who would lose it if it could not be asserted as an offset to a demand against him.

In the same volume, page 470, sec. 131, it is broadly stated that: "Nevertheless, equity will take cognizance of cross claims between litigants, although they are wanting in mutuality, wherever it becomes necessary to effect a clear equity or prevent injustice." The text in section 157b, page 300, volume 5, of Michie on Banks and Banking, states the same rule in this language: "And the maker of a note to a bank, which thereafter became insolvent, may offset his indebtedness to the bank by a deposit in his name as trustee, where he was personally liable to his cestui que trust for the amount of the deposit." The cases cited in support of that text in note 15 thereto are, Funk & Son v. Young, 138 Ark. 38, 210 S. W. 143, 5 A. L. R. 79, and Coburn v. Carstarphen, 194 N. C. 368, 139 S. E. 596, 55 A. L. R. 819. In the annotation to the Funk Case as published in 5 A. L. R. and which begins on page 83 of that volume, it is pointed out that the same rule was applied by the New York appellate court in the case of Miller v. Franklin Bank, 1 Paige, 444, where the deposit account was made in defendant's name followed by descriptive words of his trusteeship, and which is the status of the account relied on in this case. The annotation to the Coburn Case on page 822 of its report in the volume of A. L. R. referred to shows that no court of last resort is in conflict with that rule, except the Supreme Court of Massachusetts in the case of Cosmopolitan Trust Company v. Wasserman, 251 Mass. 514, 146 N. E. 772, and it did so in that case by analogy to the reasoning which some courts employ in denying the right of set-off as between joint and individual claims, but which has long since been discarded by us.

We deem it unnecessary to incumber the opinion with further citations, since the rule as declared in the cases and texts referred to, in furtherance of carrying out the fundamental purposes of allowing the defense of set-off to be made, meets with our approval, and which should be applied whenever it is necessary to prevent injustice as well as circuity of action, and when to do so no rights of third parties would be affected. The rule is applicable in this case whether it be restricted to

the facts of the New York Miller Case, supra, or not, since, we repeat, the guardian's account sought to be relied on in this case as a set-off and which the trial court denied was and is in his name, followed by the descriptive word "Guardian."

In view of the law as so declared, and of our approval of its justness, it results that the court erred in sustaining plaintiff's demurrer to the answers filed in the respective separate suits before consolidation, and the judgment is to that extent reversed, with directions to overrule the demurrer, and for proceedings not inconsistent with this opinion.