# Fidelity & Deposit Co. of Maryland v. Lyon et al.

Nov. 25, 1938.

W. H. DYSARD for appellant.

M. O. WHEELER for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is prosecuted from a judgment against appellant in the sum of $1,827.35 on a banker's blanket bond No. R-228756 executed by it to the First National Bank of Paintsville, Kentucky, which included securing the honesty of one J. Hobart Meade.

The question is one of construction of the terms and legal effect of the bond, as the facts appear in the record by a stipulation in substance as follows:

On March 30, 1931, the National Surety Company executed a banker's blanket bond to the Paintsville National Bank, covering defalcation by any employee. This bank continued in business until March 4, 1933, when it was closed by order of the Comptroller of the Currency, and on March 16, 1933, James W. Turner was appointed conservator thereof.

On April 7, 1933, a rider was attached to the above mentioned bond by the National Surety Company changing the name of the insured from "Paintsville National Bank" to "Paintsville National Bank and James W. Turner, Conservator of the Paintsville National Bank." The change, effected by this rider, was accepted in writing thereon by the Paintsville National Bank and by the Conservator.

On September 1, 1933, the First National Bank of Paintsville was incorporated and took over *certain assets* of the Paintsville National Bank, the balance of the assets being turned over to appellees, R. C. Lyon, Z. Wells, and James W. Turner, as trustees for the depositors and stockholders of the old Paintsville National Bank.

On March 7, 1934, a rider was attached to the above mentioned bond, by which the National Surety Corporation assumed the liability of the National Surety Company and the insured's name was changed from "Paintsville National Bank and James W. Turner, Conservator of the Paintsville National Bank" to the "First National Bank of Paintsville." The wording of

this rider, so far as necessary to be considered in this action is:

"Rider to be attached to and form a part of banker's blanket bond No. R-228756 * * * issued by the National Surety Company * * * in favor of Paintsville National Bank and James W. Turner, Conservator of Paintsville National Bank, Paintsville, Kentucky, * * * it is understood and agreed that from and after the date hereof the liability of the corporation under said certificate * * * shall be construed to apply to and be limited to such losses as would be covered under the aforesaid bond if there were attached thereto a rider reading as follows: The underwriter gives its consent to the change of the name of the insured from Paintsville National Bank and James W. Turner, Conservator of Paintsville National Bank, Paintsville, Kentucky, to the First National Bank of Paintsville, Paintsville, Kentucky."

On March 30, 1934, the appellant, Fidelity and Deposit Company of Maryland, executed to the First National Bank of Paintsville, banker's blanket bond No. 2524096, to which was attached a rider, the wording of which, so far as material, is:

"Rider to be attached to and form a part of banker's blanket bond No. 2524096 * * *. Whereas, the prior bond as of the effective date of the attached bond, has been canceled or terminated by notice or agreement, as is evidenced by the issuance and acceptance of the attached bond, and this rider; now, therefore, it is hereby understood and agreed as follows:

"That the attached bond be construed to cover * * * any loss or losses under the prior bond which shall be discovered after the expiration of the time limited therein for the discovery of loss thereunder."

The premium for this bond executed by appellant was paid by the First National Bank of Paintsville and in the transaction appellant was represented by insurance agents who had not written, and who had no connection with, the former bonds and riders.

J. Hobart Meade had been an employee of the Paintsville National Bank and the conservatorship and

on the formation of the First National Bank was employed by it. On December 15, 1935, it was discovered that he had defaulted in his accounts to the extent of $1,827.35 while he was an employee of the Paintsville National Bank and/or the conservatorship and to the amount of $4,654.31 while an employee of the First National Bank. Appellant recognized its liability for the last mentioned amount and paid same but denied liability to the old bank and/or the conservatorship for the $1,827.35, which is the sum for which judgment was rendered against appellant.

Claims were properly proven and presented to the National Surety Corporation and to appellant, the former denying the claim on the ground that no loss was discovered for more than one year after the termination of its bond.

Appellees acquired by assignment all the claims and rights of the Paintsville National Bank and of James W. Turner, conservator thereof, including the loss in question in this case and by reason thereof are the owners of the claim asserted herein.

The entire assets of the First National Bank, excepting capital and surplus, consisted solely of assets and liabilities acquired and assumed from the old Paintsville National Bank and James W. Turner, conservator thereof. The remaining assets of the old bank and the conservator were placed in trust for the benefit of its creditors and James W. Turner, conservator, as their interests should appear.

It is appellant's contention that after the execution of the rider of March 7, 1934, attached to the original bond, the appellees were no longer insured and they insist that the rider has no provision which even suggests that coverage of the Paintsville National Bank or the conservator was to be continued, but we are of the opinion that they are certainly in error as to this contention. Paragraph six of the stipulation of facts agreed that the National Surety Corporation assumed the liability of the National Surety Company and such liability assumed could have been no other than liability to the Paintsville National Bank and/or the Conservator. It is true that from March 7, 1934, on, the National Surety Corporation insured only the First National Bank, but it remained liable for any defalcation which might have taken place up to that time and this liability was to the

old bank and the conservator. The obligation of that rider was that "from and after the date hereof" liability thereunder was limited to the First National Bank, but there is nothing in the rider that in any way intimates that the National Surety Corporation was not liable for defalcations which had already taken place. In short, we regard that rider as merely substituting the National Surety Corporation for the National Surety Company as to past liability and providing that as to future liability it was only bound to the First National Bank. We have had little difficulty in deciding that this is the true situation as it existed after the rider of March 7, 1934, was attached to the original bond.

The main difficulty in this case arises out of the proper construction to be given to the rider attached to the bond executed by appellant, the contents of which has been quoted as above. The legal effect of that rider, expressed in the fewest possible words, amounts to nothing more or less than this: *The prior bond is this day canceled and this bond covers loss under the prior bond discovered more than one year from today.* As the loss in controversy occurred "more than one year from today" (March 30, 1934) we may by the process of elimination reduce the language in the rider necessary to be considered in the decision of this case to this, "This bond covers loss under the prior bond."

It is appellant's theory that this language only means, and was only intended to mean, that the bond covered loss to the First National Bank only under the prior bond and that the period referred to was the period from March 7 to March 30, 1934, and we must admit that its contention is somewhat logical and plausible; it has perplexed us greatly to arrive at the true meaning of those words and the true intention of the parties at the time of the execution of the new bond and rider by appellant. However, we have arrived at the conclusion that at least the parties arranging for this insurance intended to have a new bond covering both the future and the past and by the past we mean the entire time covered by all the bonds and riders appearing in this transaction. In short, we are of the opinion that the circumstances shown in this case evidence the fact that there was a community of interest at least between the new bank and the old bank and conservator and that the whole transaction shows a desire on the part of those securing these bonds to see that no

past liability was released. This is evidenced by the fact that while the National Surety Corporation became bound as to future liability only to the First National Bank, yet it was required to assume any liability that might have accrued in the past to the old bank and/or the conservator. If this had not been the case, the old bond would have been canceled and a new bond taken from the National Surety Corporation.

We are of the opinion that when the bond and rider were executed by appellant the same situation existed and that the parties negotiating this insurance believed and felt that they were merely substituting appellant's bond for the old bond and under the old bond they knew that past liability was covered as far back as March 30, 1931, the date of the original bond.

If it was intended by appellant to cover loss under the prior bond only to the First National Bank, it, as the maker of this instrument, had power to save itself by providing in the rider that this bond covered loss under the prior bond only to the First National Bank, but it did not do so. It merely provided that this bond covers loss under the prior bond and under the prior bond there was a liability to the appellees although the defalcation had not been discovered at that time.

It is true that this last bond of appellant's is executed to the First National Bank and there is plausibibility in its contention that the language of the rider, taken in connection with the language of the bond, means that it covers loss under the prior bond only to the First National Bank. However, it must not be forgotten that in construing a written instrument, the courts will construe it more strongly against the party who prepared the instrument or writing and, in cases of doubtful construction, will resolve the doubt against the maker of the instrument in favor of the party thereto who did not take part in its preparation.

We realize also that to construe the rider as meaning that appellant by its bond covered loss under the prior bond to appellees, amounts to a construction holding that this contract to that extent was made for the benefit of appellees who were not parties to the contract. However, that is the conclusion to which we have come, namely, that in securing this contract of insurance the parties negotiating therefor were intending to, and did, make a contract for the benefit of the appellees to cover

them against anything which might have taken place in the past. All the facts and circumstances show that the authorities of the First National Bank were working in connection with, and in conjunction with, those who had been operating and in control of the old bank and the conservatorship. It is true that those for whose benefit we thus say this contract was made are not named in the contract, or bond, itself, but by appellant's obligation that its bond covered loss under the prior bond, these parties are made definite and certain as they are named in the prior bond.

Appellant cites the Restatement of the Law of Contracts by the American Law Institute, chapter 6, page 133, as authority that such a promise or obligation as this, if any existed, constituted appellees' "donee beneficiaries," but we cannot agree with this contention. If we are correct in our assumption that there was an obligation under the appellant's bond to them by reason of appellant, by its bond, covering "losses under the prior bond," we rather regard appellees as "creditor beneficiaries," as defined in sub-section "b" of that authority. Our reasons for saying this are that, as above indicated, there was a working together and mutuality of interests between the authorities of the First National Bank and the old bank, and we feel justified in saying that we believe they felt they had an actual or supposed or asserted duty to those in charge of the old bank and its affairs.

We have come to the conclusion after most mature and earnest consideration of every feature of this case and every argument advanced by appellant, that by its bond and rider, it assumed all obligation of the prior bond (which was a bond covering liability to appellees) and that this bond of appellant was a contract made for appellee's benefit and so intended, at least by those parties who negotiated for the bond, if, actually, not so intended by appellant, the construction must be most strongly against it and the doubt resolved in appellee's favor because the instrument was prepared by appellant.

The judgment is affirmed.

The whole court sitting.