## Marcum et al. v. Wilhoit, Banking and Securities Com'r, et al.

May 5, 1942.

O. B. Bertram and George O. Bertram for appellants.
Philip Bertram and A. E. Funk for appellees.

Opinion of the Court by Judge Ratliff—Reversing.

U. G. Marcum, the appellant, brought this action against appellees under the provisions of the Declaratory Judgment Act, Section 639a—1 et seq. of the Civil Code of Practice, seeking a declaration of the rights of the parties as to whether appellant and his partners of the firm of the Marcum Grocery Company are entitled to have a deposit in the insolvent Bank of Campbellsville (hereinafter referred to as the bank) applied as a set-off against a note which appellant U. G. Marcum, a member of the firm, executed in his individual name and owed to the bank at the time the bank was placed in the hands of appellees for liquidation.

The allegations of the petition are, in substance, that for several years prior to June 5, 1939, the appellant Marcum was a member of the Marcum Grocery Company which was a partnership composed of Marcum, A. Henderson and J. F. Henderson, and for several years prior to the closing of the bank the Marcum Grocery Company did its banking business with the said bank; that Marcum was the owner of 62% of the stock of the partnership, A. Henderson was the owner of 30% of the stock, and J. F. Henderson was the owner of 8% of the stock, all of which facts were known by the officers and directors of the bank. It is further alleged that on March 17, 1937, the Marcum Grocery Company was in need of additional funds for the purpose of operating its business and on said date Marcum went to the bank and advised the officers and board of directors of the bank that the grocery company was in need of funds and he wanted to borrow for the grocery company the sum of $4,000; that the officers and directors of the bank advised him that the bank then had notes executed by the grocery company to the amount of several thousand dollars for money loaned it by the bank, and the officers of the bank suggested to Marcum that he execute his individual note to the bank for the sum applied for, and at the suggestion of the officers and directors of the bank he did execute his individual note to the bank for the sum of $4,120 and immediately placed the net proceeds of the note less interest, or the sum of $4,000, to his individual credit in the bank and thereupon gave his check on the bank payable to the Marcum Grocery Company for the same $4,000, which sum was then and there credited to the ac-

count of the grocery company. He further alleged that on May 28, 1937, he again went to the bank for the purpose of borrowing additional funds for the grocery company and was again advised by the officers and directors of the bank to handle the transaction in the same way as the previous one, and at the suggestion and request of the officers and directors of the bank he executed to the bank his individual note for the sum of $1,000, which amount was placed to his credit, less the discount, and then at the same time he gave his check to the grocery company and the proceeds of the note were placed to the credit of the grocery company. It is further alleged that the two notes were renewed from time to time and the interest thereon paid out of the funds of the grocery company, and on January 6, 1939, the two notes were combined into one note of $5,000 which was renewed in the same way and manner until the bank closed. On June 5, 1939, the bank closed its doors and ceased to do business, and at that time there was on deposit in the bank to the credit of the grocery company the sum of $6,101.89, and also there was an unpaid note executed by the grocery company to the bank in the sum of $1,500 in addition to the $5,000 note signed by Marcum individually. He further stated that immediately after the closing of the bank he filed with the liquidator of the bank his affidavit setting out the above facts and requested that after the payment of the $1,500 note executed by the grocery company out of the amount on deposit in the bank to the credit of the grocery company and that the remainder of the balance, $4,601.89, be applied or set-off as a credit on the $5,000 note executed by Marcum, and asked that the banking commissioner and liquidating agent be required by judgment of the court to set-off the balance to the credit of the grocery company against the said $5,000 note executed by him individually.

It is further stated that the bank is insolvent and will not pay dividends in excess of 75% of the claims against the bank and appellees have failed and refused to pay the grocery company any part of the dividends on the amount deposited in the bank to the credit of the grocery company at the time it closed, notwithstanding the dividends theretofore paid by the liquidator of the bank is in excess of the amount due from the grocery company to the bank by reason of the note of $1,500 set out above, and avers that unless defendants as banking commissioner and liquidating agent are adjudged and

required to set-off the amount due the grocery company after the payment of the $1,500 note, the plaintiff Marcum will be required to pay the $5,000 note executed by him for the use and benefit of the grocery company, which fact was known to the officers and directors of the bank at the time the notes were executed and at the time the notes were combined and renewed as one note, and that the officers and directors of the bank had full knowledge of the transaction and knew that he, Marcum, did not receive or derive any profit or benefit either directly or indirectly from the execution of said note, and knew that the proceeds of the notes were to be used for the Marcum Grocery Company which received the use and benefit of the same. After making other allegations with respect to the rights of the parties being affected and that a controversy existed between the parties, he prayed for a declaration of rights under the facts set out and that he be adjudged entitled to off-set the balance to the credit of the grocery company as a credit on his note in the sum of $5,000. A. Henderson and J. F. Henderson were named party defendants in the petition, but later filed their intervening petition in which they consented that the partnership funds be set-off against the $5,000 note executed by Marcum and joined in the prayer of the petition asking the same relief sought by Marcum. Appellees filed a general demurrer to the petition and intervening petition, which demurrer the court sustained and refused to grant the relief sought and dismissed the petition. Hence this appeal.

The case is before us on demurrer to the petition; that is, whether under the facts stated in the petition and admitted on demurrer appellants are entitled to the relief sought. The generally applicable law governing the right to set-off is that there must be mutuality of obligation; i. e., the debts must be owing between the same persons and at the same right. Bryant Brothers et al. v. Wilson, Banking Commissioner, 253 Ky. 578, 69 S. W. (2d) 1020; Jewett v. Martinsville Milling Co., 7 Cir., 76 F. (2d) 153. There is, however, a generally recognized exception to the rule where to deny a set-off would entail inequity and hardship which its allowance would avert, and in such cases a court of equity will allow such set-off. Bryant Brothers v. Wilson, supra. We will consider the case before us from a viewpoint of the last stated principle; that is, whether it comes within the general rule that requires strict mutuality of obligation

to pay, or within the exception to the rule. In 9 C. J. S., Banks and Banking, Section 437, after stating the general rule, it is said:

> "On the other hand some courts have allowed the set-off, although the claims did not possess strict mutuality, and partners jointly indebted to a bank have been held entitled to set off their individual deposits against the joint obligation."

Also, in Michie on Banks and Banking, Vol. 5, page 301, Section 157c, the general rule and the exception thereto with respect to mutuality of obligation is thus stated:

> "A member of a firm which was indebted to an insolvent bank is not entitled to set off against his share of the firm debt the amount of his individual deposit in the bank. And a partnership deposit can not be set off against the debts of the individual members of the partnership owed to the bank, unless there be some special equity or equities to justify it. Such special equities may arise under circumstances of fraud; or where there are a series of transactions in which joint credit is given with reference to the special debt; or where the mode or course of dealing is such as to furnish a presumption that there was an agreement that the mutual dealings on each side, and independent debts, were to be set off against each other, and that, without such right of retaining against each other, the parties would not have continued dealing with each other. In Pennsylvania a member of a firm, when sued by the assignee of an insolvent bank on his individual note, may, with the consent of his copartner, set off a debt due the firm."

In Gordon, Secretary of Banking, v. Anthracite Trust Company, 1934, 315 Pa. 1, 172 A. 114, 115, 93 A. L. R. 1160, Frank X. Burke, President of Timothy Burke, Inc., borrowed in his individual name the sum of $6,610 from the Anthracite Trust Company. The officials of the trust company who negotiated the loan knew that the money obtained by Burke on his note was for the purpose of purchasing stock for the corporation and such was the use to be made of the money. Later the trust company became insolvent and passed into the hands of the Secretary of Banking and that at time there was owing to the trust company on the Burke note the sum

of $5,260 and Timothy Burke, Inc., had on deposit with the trust company approximately $5,500 which the corporation requested the Secretary of Banking to set-off against the obligation of the Burke notes. This the Secretary of Banking refused to do and insisted that the notes be paid. In opposition to the right of set-off it was contended, as is contended in the present case, that the trust company could not have brought suit against the corporation on the notes, since the signature of the corporation does not appear thereon. To sustain the right of set-off it was contended on the other hand that the entire transaction from its inception was a corporation matter, that the money was borrowed for the corporation in order that it might speculate in the stock of another company, and that the money borrowed on Burke's note was in fact so used, as was known to the officials of the trust company. The Supreme Court of Pennsylvania sustained the contention of the corporation and allowed the set-off. In the course of the opinion the court said:

"Upon several occasions, when called upon to decide problems of set-off, we have looked through the transactions as they appeared on their surface in order that we might determine the real facts and the true intention of the parties. In Gordon, Secretary of Banking, v. Union Trust Co., 308 Pa. 493, 162 A. 293, 294, two trust companies deposited their trust funds with the other. Upon the taking of possession of one by the secretary of banking and the claim of the secretary for the amount of the trust deposit, the other company claimed a set-off against it because of the trust fund deposit it had in the closed institution. There we looked through names to the realties of the situation and accordingly determined that the true owners of the two deposits were entirely different persons, and on the basis of this fact we concluded there was no mutuality of right. Mr. Justice Kephart, speaking for the court, said: 'The names in which suit could be brought and defended furnish an indication, but are not the only criterion, of the right of set-off. To whom do the funds really belong? Mutuality of right in a set-off is not circumscribed by the "right to bring an action," but the broader question may be, and generally is, of importance. Whose money or claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions.' "

In that same opinion the court cited a number of other cases which support the right of set-off in like and similar cases. The trend of those cases seems to be to the effect that a court of equity will look to the circumstances and substance of a transaction and the true intention of the parties rather than to form. In the case at bar it is alleged in the petition and admitted on demurrer that the appellant Marcum applied for the loan for the benefit of the partnership, Marcum Grocery Company, and the officials of the bank knew that the loan sought by Marcum was for the benefit of the grocery company and not for his individual use, and at the suggestion of the bank officials Marcum executed his individual note for the sum borrowed with the understanding that it was for the use and benefit of the partnership, and in fact the proceeds of the loan were then and there deposited to the account of the partnership and used by it in furtherance of the partnership business, and presently became an asset of the partnership, and is a part of the $6,101.89 on deposit in the bank to the credit of the partnership at the time the bank closed. We conclude, therefore, that the facts of this case bring it within the category of the cases and authorities cited, supra, and to disallow the set-off by the application of the rule of strict mutuality and obligation to pay would result in a grave injustice and inequity.

Appellees cite and rely upon numerous authorities to sustain the judgment of the lower court refusing to allow the set-off, among which is Jewett v. Martinsville Milling Company, supra. The facts in that case are thus stated in the opinion, which for convenience we here reproduce:

"The First National Bank of Martinsville was a national bank which closed its doors June 27, 1932. the milling company, a longtime customer of the bank, then had on deposit $5,977.85. Clifton F. Schnaiter, who then was and long theretofore had been the milling company's president and the owner of practically all of its capital stock, had signed, as maker, a note to the bank, upon which, at the time of the bank's closing, there was due $4,000, the note having been reduced by payments to that amount from the original loan of $5,000.

"In 1928 the milling company held a mortgage upon a large farm owned by the S. Major estate, to

secure an indebtedness to the company of $2,457.09. The farm was subject to prior mortgage of $25,000 which was due, and its forecloseure was threatened. Schnaiter asked the bank to loan his company $25,000 to pay off that mortgage, it having been arranged that title to the farm would then be conveyed. The bank's officers, upon consideration of the matter, informed Schnaiter that the bank would make no loan to his company, but that if he, Schnaiter, would take title to the farm the bank would let him have $20,000 on his own notes, secured by a mortgage on the farm, and that on his own unsecured note would let him have $5,000. Schnaiter accepted the proposition, took title to the farm (which he still holds), gave the bank his individual notes secured by his mortgage on the farm for $20,000, and his unsecured note for $5,000, the entire proceeds of the loans going toward paying off the first mortgage, which was released. How the milling company's second mortgage was treated or disposed of in order to place the bank's mortgage first, the evidence does not disclose.''

Schnaiter and the milling company sought to have the money on deposit in the insolvent bank set-off against the note executed by him individually. The District Court allowed the set-off but the Circuit Court of Appeals, Seventh Circuit, reversed the order of the District Court and denied the right of set-off. The facts in that case, as appear in that opinion, are somewhat similar to the facts in the case at bar, except however, Schnaiter, who borrowed the money on his individual note, invested the proceeds of the loan in a farm and the deed was made to him individually and he then mortgaged the farm to the bank to secure the loan, and he still holds the farm which was never conveyed to the corporation or otherwise became an asset of the corporation. If the proceeds of the loan made by the bank to Schnaiter had been immediately deposited to the credit of the corporation with the understanding and acquiescence of the bank, or had Schnaiter immediately conveyed the farm to the corporation and it had thereby become an asset of the corporation, the facts then would be analogous to the present case and no doubt a different result or determination of that case might or should have been reached. Since the facts in the case supra are distinguishable from the facts in the present case in the respects indicated, we

do not think it is sufficient to support the contention of appellees. A number of other cases are cited and relied on in brief of appellees, but upon examination of them for ourselves we find that they come within the same category as the last cited case supra, except that they are not as strong in favor of appellees' contention as the one we have presently distinguished. Hence, it becomes unnecessary to discuss or elaborate on the other authorities cited for appellees.

It is further insisted for appellees that the set-off should not be allowed because of the interest of third parties; namely, the depositors of the insolvent bank, since to reduce the assets of the bank by allowing the set-off sought by appellants would reduce the dividends of the depositors. Conceding that the depositors are interested parties and might suffer minor losses resulting from the set-off, yet it must be remembered that the conditions were brought about by the conduct and acquiescence of the officials of the bank with whom the depositors had entrusted their money, and any minor losses which might result to the depositors by the allowance of the set-off is indeed meager in comparison to the loss and inequity which would be suffered by appellant Marcum if the set-off be denied. We do not think that the interest of the other depositors as third parties, if they be such, is sufficient to warrant a court of equity to refuse appellant Marcum the relief sought.

For the reasons stated the judgment is reversed and remanded with directions to set it aside and to over-rule the demurrer to the petition and for proceedings consistent with this opinion.