MORGANFIELD NATIONAL BANK, Appellant,

v.

DAMIEN ELDER & SONS, A Partnership; Damien Elder; Jerry Elder; Robert J. (Bobby) Elder; and Tommy Elder, Appellees.

No. 91–SC–516–DG.

Supreme Court of Kentucky.

Sept. 3, 1992.

Ridley M. Sandidge, Jr., Holbrook, Wible, Sullivan & Mountjoy, Owensboro, for appellant.

Phillip G. Abshier, Bamberger & Abshier, Owensboro, for appellees.

REYNOLDS, Justice.

This is an action filed by Damien Elder & Sons, a partnership consisting of Damien Elder (father); Jerry Elder (a son); Robert J. (Bobby) Elder (a son); and Tommy Elder (a son), seeking a judgment against Morganfield National Bank for damages which may have occurred from the setoff of two partners' personal bank indebtednesses from the partnership's checking account.

The parties and trial court assumed, for purposes of the original summary judgment, and thus, it is also assumed for purposes of this appeal, that Damien Elder & Sons was a partnership at the time of the setoffs.

Damien Elder, a long-time farmer, associated himself with three of his sons in a farming operation utilizing the name Damien Elder & Sons. An account styled Damien Elder & Sons was opened with the bank in 1976 and used in the transaction of farm business. The four, as individuals, also have been involved in personal business transactions with the bank. The initial bank account card for the business has never been produced. The first account was closed on at least one occasion (1985) for reasons not involved with this litigation. It was thereafter reopened February 2, 1987.

On January 2, 1981, the business account was changed to a Negotiable Order of Withdrawal (N.O.W.) Account. However, the same account number was retained. The N.O.W. Account Agreement was established (or reestablished) and the name of the account was designated "Damien Elder & Sons." That portion of the N.O.W. Account Agreement pertaining to signatures lists Damien Elder, Karen Elder and Denny Hardesty as the signatories. This account agreement/signature card has not been signed by Damien Elder's three sons. Their signatures were cut from a prior signature card by the bank and affixed at the bottom of the front side of the N.O.W. Account Agreement.

Both Jerry and Bobby Elder had been granted personal loans by the bank for which their individual notes had been executed. Interest on Jerry Elder's personal note was past due and Damien Elder, on Friday, May 15, 1987, met with the bank's vice president, Jerry Ruark, relative to the matter. Discussion between the two involving interest rates, note indebtedness reduction, and possible bankruptcy by the sons resulted in no resolution of the problems. The Damien Elder & Sons account, on May 18, 1987, contained $46,628.68, and the bank exercised a setoff against the Elder & Sons account by crediting $32,-329.05 to pay the past due Jerry Elder individual account. In addition, the bank exercised a setoff against the Elder & Sons account, now containing $14,299.63, and credited that sum to reduce the amount owed on the Bobby Elder individual note. The bank thereafter dishonored 29 checks drawn on the partnership account for the reason of insufficient funds.

The Elders, individually and in their partnership name, filed this action against the bank alleging wrongful setoff, conversion, breach of contract, wrongful dishonor of

checks, bad faith, outrage and reckless conduct. The trial court granted the bank's motion for summary judgment. The Court of Appeals reversed and we affirm the Court of Appeals.

The bank maintains that all partners consented to the bank's right to set off the debts of the individual partners as against the partnership account and the partners were bound by the terms of the account agreement although three of the parties had not signed the agreement.

■ The N.O.W. Account Agreement/signature card constitutes the agreement or contract which must be construed as a whole and whereby effect is to be given to all parties and every word in it, if possible. Thus, the legal interpretation of the agreement should be made in such a way as to make the promises mutually binding on all parties unless such a construction is wholly negated by the language used. *City of Louisa v. Newland,* Ky., 705 S.W.2d 916 (1986).

The basic printed agreement (with informational blanks) consists of a two-sided printed form. The account agreement herein in its "as is" state is discussed as follows: The account agreement herein shows date opened 1/2/81; initial deposit of $ blank ; by J. Ruark. The section of the agreement utilized to designate the "TYPE OF ACCOUNT" remains blank. The name of the account is designated as Damien Elder & Sons. There appears thereafter as signatories the named persons of Damien Elder, Karen Elder and Denny Hardesty, with a notation that the number of signatures required for withdrawal is one. Below this section and set out in a black border is the following statement: "The above signed agree to the conditions printed on the backside of this card, and authorize this institution to recognize the signatures of the above to transact business in this account." The signatures of Jerry Elder, Bobby Elder and Tommy Elder, which had been cut from some other signature bearing instrument, had been attached by a bank employee at the bottom of the front side of the account agreement.

The appellant stresses the language of two paragraphs (nonsequential) on the reverse side of the account agreement which state:

"We", "our" and "us" mean and refer to the financial institution named on the reverse side, its successors and assigns. "You" and "your" mean and refer to all Depositors jointly and unless specifically indicated to the contrary hereon or by separate written agreement, each Depositor severally.

. . . . .

AGREEMENT CONCERNING SET-OFF RIGHTS OF FINANCIAL INSTITUTIONS

You hereby acknowledge that we have the right to charge or set-off against any of your deposits with us any debts or obligations owing by you to us whether direct or indirect, secured or unsecured, absolute or contingent, joint or several, due or to become due, whether as maker, endorser, guarantor or otherwise, now existing or hereafter contracted or acquired by us and wherever payable, and the interest thereon and expense, if any, which may be incurred by us in connection therewith, and this Agreement shall be construed to be your consent to make such a charge of set-off against your account(s) if consent be required by any present or future statute or law.

■ The construction as well as the meaning and legal effect of a written instrument, however compiled, is a matter of law for the court. *Equitable Life Assurance Society of the United States v. Wells,* 101 F.2d 608 (6th Cir.1939). The account agreement clearly designates the name of the account to be Damien Elder & Sons and with no further designation or explanation appearing anywhere upon the instrument, it is to be construed that "Damien Elder & Sons" is the sole depositor of this account. Nothing appears on the account card which designates the names of the partners. It is not contended that Karen Elder or Denny Hardesty are either the depositors or partners although their names (signatures) appear in the portion of the card reserved for

the party or parties who are authorized to make withdrawals.

The partnership, as the depositor, has consented to the right of setoff. The account card does not designate individual partners to be depositors.

Although the bank maintains that all four partners became bound by the terms of the signature card and offers *Hagan v. Hurst*, 228 Ky. 645, 15 S.W.2d 446 (1929), as authority, we determine that the case is not dispositive. There is no effectual or reconcilable language which appears in the account agreement, as it is compiled, which would bind any of the three Elder sons to the offset terms. The account agreement card as it is compiled (not completed) neither discloses nor reflects a distinction between those persons who are not partners, who are partners and those that are only signatories. The bank's argument promotes ambiguity, which further continues if a setoff is authorized against nonpartners or against partners who are not named or designated and whose association, at most, arises from signatures which were cut from another instrument, and affixed (by the bank) to the bottom of the front side, and outside the perimeters of the instrument.

█ The bank cannot apply a deposit to depositor's debt to the bank where a setoff is contrary to the agreement under which the deposit was made. The Court construes the written instrument against the party who prepared the agreement and the writing and in a case of both questionable/doubtful construction, resolves such doubt as against the bank as the preparer of the instrument. *Fidelity & Deposit Co. of Maryland v. Lyon*, 276 Ky. 411, 416, 124 S.W.2d 74 (1938).

█ The specific agreement authorizes the bank the right to set off debts of the named depositor (the partnership) from the partnership account. No further enlargement of the act of setoff is provided by this specific agreement. The bank refers to circumstances and substance of the transaction, and the intention of the parties rather than to form. There is no finding of fact or evidence suggesting that the funds

from the loans personally obtained by Jerry and Bobby Elder had been deposited (either in part or whole) in the partnership account. Without a specific agreement allowing for a setoff in the manner as argued by the bank, or equitable principles, the general rule requires there be a strict mutuality of obligation between the named depositor and the bank. *Marcum v. Wilhoit*, 290 Ky. 532, 162 S.W.2d 10 (1942). It continues to be a well-settled principle that an individual indebtedness of one partner cannot be set off against the debt due the partnership. *Bauer Cooperage Co. v. Ewell & Smith*, 149 Ky. 838, 844, 149 S.W. 1137 (1912).

█ The Court is not persuaded that waiver or estoppel is applicable to the transactions between the parties. The appellees have not adopted an inconsistent position with either the initial or continuing agreement of the parties. Appellees do not deny the existence of the agreement with the bank, but only that the written agreement does not provide for setoff provisions that encompassed the individual accounts of parties who were not designated or named as a depositor or who agreed to a setoff. Thus, can the bank assert that it was prejudiced by its own acts? Clearly there are no transactions which occurred or developed between the parties which would evidence either custom or prior usage of setoff.

The opinion of the Court of Appeals is affirmed.

STEPHEN, C.J., and COMBS, LAMBERT, LEIBSON and WINTERSHEIMER, JJ., concur.

SPAIN, J., dissents by separate opinion.

SPAIN, Justice, dissenting.

Respectfully, I dissent and would reverse the Court of Appeals and affirm the judgment entered by the trial court in favor of the bank. In so deciding, I, like the learned circuit judge, am fully aware that a creditor cannot *ordinarily* apply partnership funds to pay the individual debts of any partner *without the consent of the*

*remaining partners. Perry Bank & Trust Company v. Napier,* 240 Ky. 469, 42 S.W.2d 694 (1931). Under the facts in the case at hand, however, the trial judge found that all the partners expressly or by implication consented to setoffs by the bank from the partnership account of debts of individual partners.

In the first place, it is uncontradicted that the notes of Jerry and Bobby Elder which were paid in whole or in part by the bank's setoffs, were actually signed by their father, Damien Elder, pursuant to powers of attorney. This is the same man who unquestionably signed the bank account card which is in dispute in this case. As such, Damien clearly waived his partnership lien in the funds so set off, since the agreement unequivocally authorized the bank to set off deposits in the account against any debts owing by any partner, jointly or severally. This is the clear thrust of *Hagan v. Hurst,* 228 Ky. 645, 15 S.W.2d 446 (1929), cited by the majority.

In the second place, the trial court correctly found as a fact from the evidence of record before it, that all three Elder sons, although they admittedly did not sign the account card at the bank, fully consented to the agreements contained therein as demonstrated by their conduct. Specifically, each son admitted in his deposition on cross-examination that he had signed checks on the partnership account. The bank honored these checks just as if each son had personally signed the account card. Under the majority's view of the agreement—that is, that the sons were in effect strangers to it—the bank certainly had no obligation to honor any such checks. In truth and fact, however, Damien Elder and all three sons, by their participation in the account, embraced the account agreement just as fully as if the sons had individually signed it.

No one contends that the facsimile signatures of the three sons were attached to the account agreement by the bank as any sort of attempt to fraudulently make it appear that they had, in fact, signed this agreement, Rather, it is clear that they were affixed to the card for comparison purposes by bank employees to insure that checks signed by any of them as partners *would be honored* and to protect all against forgery. This being so, where is the "mutuality of obligation" between the sons and the bank to which the majority gives lip service, citing *Marcum v. Wilhoit,* 290 Ky. 532, 162 S.W.2d 10 (1942), if we let the sons disavow the bank's right of set-off?

In my opinion, the trial court correctly invoked the doctrine of equitable estoppel as applicable to these facts. *Hicks v. Combs,* 311 Ky. 149, 223 S.W.2d 379 (1949), cited by the trial court, succinctly defines the doctrine's application " . . . to transactions in which it would be unconscionable to permit a person to maintain a position which is inconsistent with one in which he has acquiesced." (Citations omitted.) *Id.* 223 S.W.2d at 381. It is further stated: "Where one accepts and retains benefits of a transaction or of *an instrument* which he was not required to take, an estoppel operates to prevent the party that benefited from questioning the validity of the transaction or basis of it." (Citations omitted and emphasis added.) *Id.*

To me, it is unconscionable under these circumstances to let Damien Elder and Sons maintain a lawsuit against the Morganfield National Bank for offsetting the admitted debts to the bank of Jerry and Bobby Elder.